# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JUDY A. CARLSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 05 C 5975 |
| | ) |
| ILLINOIS COMMUNITY COLLEGE | ) |
| DISTRICT 525 and PETER COMANDA, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN

This matter is before the court on Defendant Illinois Community College District 525's ("ICC") and Defendant Peter Comanda's ("Comanda") motion for summary judgment and motion in the alternative to strike the request for punitive damages. For the reasons stated below, we grant in part and deny in part Defendants' motion for summary judgment and deny without prejudice the motion to strike.

## BACKGROUND

Plaintiff Judy A. Carlson ("Carlson") alleges that she was employed by Joliet Junior College ("JJC") where she worked as a part-time records clerk and dispatcher for the JJC Campus Police Department ("Police Department"). According to Carlson,

1

as of December 2002, Commander Melvin Cornelius ("Cornelius") was her immediate supervisor. Comanda was the JJC Chief of Campus Police. Defendants claim that prior to June 2003, Carlson's work performance was poor and she was reprimanded on several occasions for misconduct at work. Defendants also contend, and Carlson admits, that in June 2003 she sent an anonymous letter ("Letter") to a co-worker ("Co-worker"). In the Letter, Carlson indicated that the Letter had been sent on behalf of the entire Police Department staff. Carlson personally attacked the Co-worker in the Letter, complaining about the Co-worker's behavior and attitude at work. Carlson admits that Comanda questioned her concerning her involvement with the Letter and that she lied to Comanda on four occasions, denying that she had sent the Letter. Carlson admits that she finally confessed to writing the Letter when Comanda informed her that her fingerprints had been found on the Letter. Comanda then called a meeting on July 16, 2003, with Carlson and the Co-worker to discuss the Letter. According to Carlson, during the meeting Comanda used the word "bitch" four times which offended Carlson. Carlson claims that after the meeting she sent an email ("Email") complaining about Comanda's alleged conduct to Alan Hardersen ("Hardersen"), the JJC Vice President of Student Services. After Carlson complained to Hardersen, Comanda discovered that Carlson had been discussing the Letter investigation with other employees at the Police Station and Comanda ordered Carlson to refrain from discussing the Letter investigation any further with any employees at the Police Station. Defendants claim that Carlson disobeyed Comanda's order and Comanda suspended Carlson and sent her home as a disciplinary measure

on July 17, 2003. Defendants contend that sometime during that same afternoon Comanda decided to seek Carlson's termination. According to Defendants, Carlson's termination was then deferred until the matter could be discussed with Hardersen and the JJC President, and on the next day Comanda instituted a reprimand and five-day suspension. Carlson's employment was terminated on August 6, 2003.

Carlson includes in her complaint a claim alleging a hostile work environment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* (Count I), a claim alleging a violation of 42 U.S.C. § 1983 ("Section 1983")(Count II), a Title VII gender discrimination claim (Count III), and a Title VII retaliation claim (Count IV). On March 7, 2006, Defendants moved to dismiss the Section 1983 claim (Count II). Carlson indicated that she did not oppose the motion and we granted the motion to dismiss Count II. Defendants now move for summary judgment on the remaining claims. Defendants also move in the alternative to strike part of Carlson's request for punitive damages.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the nonmoving party's case." *Id.* at 325. Once the movant has met this burden, the nonmoving party cannot simply rest on the allegations in the pleadings, "but affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. Pro. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Phillip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

### I. Gender Discrimination Claim (Count III)

Defendants move for summary judgment on the gender discrimination claim (Counts I and II). A plaintiff bringing a Title VII discrimination claim can defeat a

4

defendant's motion for summary judgment under the direct method of proof or the indirect method of proof. *Scaife v. Cook County*, 446 F.3d 735, 739-40 (7th Cir. 2006). Carlson does not indicate in her answer to Defendants' motion for summary judgment which method she seeks to employ and makes references to both the direct and indirect methods of proof and thus we shall address both methods.

### A. Direct Method of Proof

Under the direct method of proof, a plaintiff must establish a discriminatory motivation through direct or circumstantial evidence. *Rudin v. Lincoln Land Cmy. Coll.*, 420 F.3d 712, 720 (7th Cir. 2005). Direct evidence of discrimination would constitute "an admission by" the defendant that the adverse employment action was taken "on the basis of" his membership in a protected class. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 610 (7th Cir. 2006). A plaintiff can also present circumstantial evidence under the direct method of proof, but such evidence must be sufficient to create "a triable issue of whether the adverse employment action of which [the plaintiff] complains had a discriminatory motivation." *Rudin*, 420 F.3d at 721(quoting *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1397 (7th Cir. 1997)). The Seventh Circuit has also indicated that one way that circumstantial evidence can create a triable issue is if there is a "'convincing mosaic of discrimination against the plaintiff.'" *Paz v. Wauconda Healthcare and Rehabilitation Centre, LLC*, 2006 WL 2670342, at *4 (7th Cir. 2006)(quoting *Walker v. Bd. of Regents of Univ. of Wis.*, 410 F.3d 387, 394 (7th Cir. 2005)); *but see Velez v. City of Chicago*, 442 F.3d 1043, 1049

5

(7th Cir. 2006)(indicating that the only evidence that can be considered under the direct method of proof is "[d]irect evidence of employment discrimination . . . which shows an employer's intent, without relying on inference or presumption").

In the instant action, Defendants contend that Carlson was suspended and fired because of her past work performance and misconduct, and because of her recent dishonesty, insubordination, and failure to follow orders. Defendants point to evidence showing that prior to June 2003 Carlson had not been performing her job well. The evidence indicates that Carlson misfiled documents and failed to file documents in a timely fashion. Defendants also point to evidence that shows that Carlson improperly associated herself with a fund-raiser, yelled at people through the protective glass at the dispatch center, and cancelled an officer's court appearance without prior approval as was required. In regard to the evidence of past poor work performance and misconduct, Carlson points to evidence that shows that on June 19, 2003, after all of the above-alleged poor work performance and misconduct, Carlson received an annual performance review ("Review") that reflected an overall satisfactory performance rating. The fact that Carlson was given such a rating in the Review is evidence that contradicts Defendants' assertion that she was a poor employee prior to June 2003. However, regardless of the Review, Defendants point to various misconduct that occurred after the Review that provided Defendants with a justification to terminate Carlson's employment. Defendants claim, and Carlson admits, that Comanda began questioning Carlson concerning the Letter on June 27, 2003. ( R SF Par. 26). Carlson also admits that she lied to Comanda on four

occasions, denying that she sent the Letter and finally admitted to sending the Letter when Comanda told her that some fingerprints were discovered on the Letter. ( R SF Par. 26-28). Carlson also admits that she subsequently lied to Comanda again, denying that she had been misinforming her co-workers concerning her involvement with the Letter. ( R SF Par. 36). Carlson also admits that Comanda then ordered her not to discuss the Letter investigation and that Carlson subsequently disobeyed the order. ( R SF Par. 37). Carlson's explanation for this lie is that after Comanda ordered her not to speak with anyone about the Letter investigation, people at the police station continued to ask her questions about the Letter investigation and Carlson thought it "was confusing" and thus "thought she must deny any ownership of the letter." (SAF 7).

The mailing of the Letter by Carlson that purported to personally attack the Co-worker on behalf of the Police Station employees, the subsequent dishonesty by Carlson with Comanda, and her failure to follow Comanda's order to not discuss the matter offered clear justifications for her suspension and termination. It cannot be reasonably inferred from the record that Comanda held an animus against Carlson because she was a woman simply because Comanda may have used the word "bitch" during the July 16, 2003 meeting. Carlson does not contend that Comanda used the word other than on that on one isolated occasion. Neither does Carlson accuse Comanda of referring to her as a "bitch." Also, at the meeting, Comanda was in fact seeking to protect the interests of the Co-worker, who was a woman, which undermines Carlson's theory that Comanda held an animus against women. Even

7

when considering all of the evidence in the record in its entirety, there is not a "convincing mosaic of evidence" that would enable a reasonable trier of fact to infer that Comanda suspended or fired Carlson because of her gender. Therefore, Carlson cannot proceed under the direct method of proof for her gender discrimination claim.

### B. Indirect Method of Proof

Under the indirect method of proof a plaintiff must first establish a prima facie case of discrimination by showing that: "(1) he is a member of a protected class; (2) he was meeting his employer's legitimate expectations at the time of the alleged adverse action; (3) he was subjected to an adverse employment action; and (4) the employer treated similarly situated employees not in the protected class more favorably." *Scaife*, 446 F.3d at 739-40. Once a plaintiff has established a prima facie case of discrimination, the burden shifts to the defendant to provide a legitimate non-discriminatory reason for the adverse action. *Id.* at 739. If the defendant provides such a reason, the burden shifts back to the plaintiff to show that the defendant's reason was a pretext for unlawful discrimination. *Id.* at 739-40.

Carlson argues that Defendants' reasons for firing her are suspect because she performed her job satisfactorily. Carlson points to her Review as evidence of her good work performance. However, as is explained above, there is admitted misconduct on the part of Carlson that occurred after she received her Review. Carlson also fails to point to a similarly situated employee that was treated more favorably and such an omission bars her from proceeding under the indirect method

of proof. *See Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 330 (7th Cir. 2002)(stating that if "a plaintiff has failed to identify a similarly situated co-worker outside of h[is] protected class, or [show] that the co-worker identified by the plaintiff, while similarly situated, was not treated in a more favorable manner," the plaintiff's "failure to offer such 'comparables' dooms her Title VII . . . claims"). Finally, as indicated above, there is an absence of evidence in the record that would allow one to reasonably infer that Comanda held an animus against Carlson because of her gender and discriminated against her because of her gender. There is not sufficient evidence to show that Defendants' given reason was a lie given as a pretext in order to discriminate against Carlson because of her gender. Therefore, based on the above, we grant Defendants' motion for summary judgment on the gender discrimination claim (Count III).

## II. Hostile Work Environment Claim (Count I)

Defendants move for summary judgment on the hostile work environment claim. Title VII prohibits an employer from "requiring employees to work in a discriminatory hostile or abusive environment." *Velez*, 442 F.3d at 1047. A hostile work environment is defined as a work environment that is "permeated with discriminatory intimidation, ridicule and insult." *Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 426 (7th Cir. 2004)(quoting *Shanoff v. Ill. Dep't. of Human Servs.*, 258 F.3d 696, 704 (7th Cir. 2001)). In order to defeat a defendant's motion for summary judgment on a hostile work environment claim plaintiff must show that: "'(1) [s]he

9

was subjected to unwelcome harassment, (2) the harassment was based on h[er] [protected characteristic], (3) the harassment was severe and pervasive enough to alter the conditions of h[er] environment and create a hostile and abusive working environment, and (4) there is a basis for employer liability.'" *Velez*, 442 F.3d at 1047 (quoting *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 863 (7th Cir. 2005)).

In the instant action, Carlson contends that she was subjected to a hostile work environment because Comanda used the word "bitch" during the meeting. However, such an isolated incident is not of sufficient frequency or severity to possibly have created a hostile work environment. The limited instance when the term was allegedly used by Comanda was not pervasive and could not reasonably have been said to have altered the conditions of Carlson's employment. Carlson also contends that the Letter investigation caused a hostile work environment, but Carlson cannot justly question the propriety of such an investigation since she admits to sending the Letter in the first place and lying about it and created the need for the investigation. Carlson does not include any other facts in her answer to the instant motion or her statement of additional facts in support of her hostile work environment claim except for a vague reference to an allegation that "[d]uring the investigation [Comanda] disclosed significant private facts regarding the investigation and Carlson to other departmental employees." (SJ Ans. 3). However, Carlson fails to provide any specific details concerning the allegation or provide a citation to the record for support of the allegation. Therefore, we conclude that no reasonable trier of fact could find that Carlson was subjected to a hostile work environment and we grant

Defendants' motion for summary judgment on the hostile work environment claim (Count I).

## III. Retaliation Claim (Count IV)

Defendants move for summary judgment on the retaliation claim (Count IV). Under Title VII, an employer is barred from "discriminat[ing] against any of his employees . . . because he has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a). A plaintiff bringing a Title VII retaliation claim can defeat a defendant's motion for summary judgment under the direct method of proof or the indirect method of proof. *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 662-63 (7th Cir. 2006).

### A. Underlying Claims and Protected Activity

We first note that the fact that we have concluded that Carlson cannot prevail on her gender discrimination claim or hostile work environment claim does not preclude Carlson from prevailing on her retaliation claim. A plaintiff can show that she engaged in protected activity under the anti-retaliation provision of Title VII by showing that "she complained about an act that she 'reasonably believed in good faith . . . violated Title VII.'" *Firestine v. Parkview Health Sys., Inc.*, 388 F.3d 229, 234 (7th Cir. 2004)(quoting *Alexander v. Gerhardt Enters., Inc.*, 40 F.3d 187, 195 (7th Cir. 1994)). A plaintiff will be found not to have engaged in protected activity when the plaintiff relied "[o]nly a groundless claim 'resting on facts that no

11

reasonable person possibly could have construed as a case of discrimination'" and "a mistake as to the merits of a complaint does not cost an employee the protection of Title VII." *Id.* (quoting in part *Fine v. Ryan Int'l Airlines*, 305 F.3d 746, 752 (7th Cir. 2002)).

In the instant action, Carlson contends that she thought that the usage of the word "bitch" during the July 16, 2003 meeting, was harassment and that she believes that the word "bitch" has a derogatory connotation to women. (SAF Par. 3)(SJ Ans. 4). Carlson sent the Email in order to complain about what she perceived as harassment relating to her gender. While the Email did not refer to conduct that could reasonably support a meritorious Title VII claim, Carlson's belief that the alleged conduct by Comanda constituted harassment that violated Title VII was not a groundless claim and Carlson's retaliation claim is not barred simply because she was mistaken. Therefore, there is sufficient evidence that shows that Carlson engaged in protected activity under the anti-retaliation provision of Title VII.

### B. Direct Method of Proof

Under the direct method of proof a plaintiff is required to either: 1) "present direct evidence (evidence that establishes without resort to inferences from circumstantial evidence) that [s]he engaged in protected activity (filing a charge of discrimination) and *as a result* suffered the adverse employment action of which [s]he complains," or 2) present sufficient indirect evidence that creates a "convincing mosaic of circumstantial evidence." *Sylvester v. SOS Children's Villages Illinois*,

*Inc.*, 453 F.3d 900, 902 (7th Cir. 2006)(quoting in *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002) and *East-Miller v. Lake County Highway Dep't.*, 421 F.3d 558, 564 (7th Cir. 2005)). Other Seventh Circuit cases, including cases more recent than *Sylvester*, have presented a separate standard for the direct method of proof for a retaliation claim under which a plaintiff is required to show that: "(1) [s]he engaged in statutorily protected activity; (2) [s]he suffered an adverse action taken by the employer; and (3) [there was] a causal connection between the two." *Tomanovich*, 457 F.3d at 662-63(quoting *Moser v. Ind. Dep't. of Corr.*, 406 F.3d 895, 903 (7th Cir. 2005)); *see also Treadwell v. Office of Ill. Sec'y of State*, 455 F.3d 778, 781 (7th Cir. 2006)(providing same standard and citing *Scaife*, 446 F.3d at 741).

In the instant action, as is indicated above, Defendants have presented a variety of evidence that is admitted as true by Carlson that shows that Carlson had engaged in misconduct at work involving the Letter. Such misconduct could have supported Comanda's decision to suspend Carlson. However, Carlson has pointed to evidence that she contends supports her theory that Comanda knew of her Email as early as sometime on July 17, 2003. Carlson argues that Comanda decided to terminate her employment after learning about the Email. Defendants argue that Comanda did not know about the Email when Comanda decided to terminate Carlson's employment. Defendants contend that Comanda learned about the Email the next day. However, Defendants only point to Comanda's deposition and affidavit in support of their contention that he did not know about the Email when Comanda decided to seek the

termination of Carlson. (SJ Mem. 4-5). Defendants argue that we must accept Comanda's assertion as true in the absence of contrary proof showing that Comanda is lying in his affidavit. We disagree. There is no definitive evidence showing when Comanda learned about the Email. It is certainly a possibility that Comanda learned about the Email on July 17, 2003 as Carlson asserts and we cannot make credibility assessments when ruling on a motion for summary judgment and simply accept Comanda's assertions as true. Whether or not Comanda knew about the Email when Comanda decided to seek her termination is a matter to be determined by the trier of fact. The trier of fact is entitled to hear Comanda's testimony if he testifies and assess his credibility.

There is also other evidence that indicates that it is possible that Comanda learned of the Email before Comanda decided to seek the termination of Carlson. John Byrnes ("Byrnes"), the Director of Human Resources, was asked when he discussed the Email with Comanda and Byrnes and his answer was far from definitive. Byrnes was asked if he talked to Comanda "before or after [his] recommendation of suspension" and Byrnes responded, "I think that was during" and then vaguely stated "[i]t was all simultaneously, yeah." (Byrnes Dep. 25).

There is a mosaic of evidence presented by Carlson that creates a possible inference of retaliation on the part of Comanda. Defendants acknowledge that Comanda had a series of problems with Carlson's work prior to the Letter investigation and that Comanda had to reprimand Carlson on several occasions. It is a possible inference from such evidence that such interactions between Comanda and

14

Carlson could have generated animosity between the two. Defendants contend that after all the prior misconduct and work problems, Comanda had been lied to four times by Carlson concerning her involvement with the Letter, lied to again about discussing the Letter investigation, and finally Carlson disobeyed a direct order made by Comanda. One possible inference from such evidence is that the Email complaining about Comanda's conduct could have been the final straw for Comanda and could have been a factor in Comanda's decision to seek Carlson's termination. We are not the trier of fact and cannot make such a determination at this juncture.

One other piece of evidence that we must construe in favor of Carlson is the fact that Comanda ordered Carlson to turn her computer back on before she left on her suspension and Carlson refused. Defendants contend that her refusal to turn her computer back on was insubordination. However, Carlson contends that she did not turn on her computer because it would have allowed Comanda to access the Email. Again, when construing the evidence in favor of Carlson, the non-movant, one possible inference that could be drawn from the evidence is that Comanda wanted to read the specific language of the Email. If that were true, it would raise other questions concerning why Comanda would attempt to access the Email and whether the Email bothered him to such an extent that he would charge Carlson with insubordination for refusing to let him see the Email. We emphasize that all of the above inferences are made when viewing the evidence in a light most favorable to Carlson and when simply determining if there is a possible mosaic of evidence that would allow for a possible inference of unlawful retaliation. Perhaps Comanda had a

legitimate reason to order Carlson to turn her computer back on and there was no hidden motive behind his order, but such a determination can only be made by the trier of fact. We conclude that there is sufficient evidence, when considered in its totality, that would allow for a possible inference of unlawful retaliation.

Even under the second standard presented above for the direct evidence method, Carlson has pointed to sufficient genuinely disputed facts and other evidence that creates a triable issue as to whether the Email caused Comanda to seek Carlson's termination. Defendants' only rebuttal to this point is that there cannot be a causal connection between the Email and Comanda's decision to fire Carlson because "Comanda did not learn of the complaint until the next day." (SJ Mem. 14). However, as is indicated above, that issue is a legitimately disputed issue that must be decided by the trier of fact. Defendants argue that "plaintiff would have this court believe that sending an anonymous letter to a co-worker at her home address, then repeatedly lying about it without remorse, and multiple incidents of brazen insubordination were not the real reason for plaintiff's termination." (SJ Mem. 15). However, arguments concerning what the court will believe or not believe are more appropriately made to a trier of fact that can assess the evidence and credibility of witnesses rather than on a motion for summary judgment. Whether the proper decision is to believe Carlson's side of the story or Defendants' side of the story is a decision for the trier of fact to make. Therefore, based on all of the above, we deny Defendants' motion for summary judgment on the retaliation claim brought against ICC.

Although, we have denied Defendants' motion for summary judgment on the claim brought against ICC, Carlson indicates in her complaint that she is bringing a retaliation claim against both ICC and Comanda. (Compl. 6). Title VII prohibits discrimination and retaliation by an employer and "[i]t is by now well established in [the Seventh Circuit] that 'a supervisor does not, in his individual capacity, fall within Title VII's definition of employer.'" *Sattar v. Motorola, Inc.*, 138 F.3d 1164, 1168 (7th Cir. 1998)(quoting in part *Williams v. Banning*, 72 F.3d 552, 555 (7th Cir. 1995)); 42 U.S.C. § 2000e-2(a); 42 U.S.C. § 2000e-3(a). There is no indication in the record that Comanda was the employer of Carlson and therefore, we grant Defendants' motion for summary judgment on the retaliation claim brought against Comanda.

IV. Punitive Damages

Defendants argue that the court should strike Carlson's request for punitive damages because ICC is a governmental entity. Defendants offer only one sentence in support of the argument and Carlson has offered no response in her answer to the motion for summary judgment. The parties have thus not sufficiently provided their positions on this issue and the punitive damages request can more appropriately be addressed in a motion in limine in which the parties can fully devote their attentions to the issue. Therefore, we deny without prejudice the motion to strike the request for punitive damages.

## CONCLUSION

Based on the foregoing analysis, we grant Defendants' motion for summary judgment on the gender discrimination claim (Count III), grant the motion for summary judgement on the hostile work environment claim (Count I), and grant the motion for summary judgment on the retaliation claim brought against Comanda (Count IV). We deny Defendants' motion for summary judgment on the retaliation claim brought against ICC (Count IV). We also deny without prejudice Defendants' motion to strike the request for punitive damages.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: September 27, 2006