IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JUDY A. CARLSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 05 C 5975 |
| | ) |
| ILLINOIS COMMUNITY COLLEGE | ) |
| DISTRICT 525 and PETER COMANDA, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN

This matter is before the court on Defendant Illinois Community College District 525's ("ICC") motion for reconsideration of this court's ruling on September 27, 2006, denying Defendants' motion for summary judgment. For the reasons stated below, we deny the motion for reconsideration.

## BACKGROUND

Plaintiff Judy A. Carlson ("Carlson") alleges that she was employed by Joliet Junior College ("JJC") where she worked as a part-time records clerk and dispatcher for the JJC Campus Police Department ("Police Department"). According to Carlson, as of December 2002, Commander Melvin Cornelius ("Cornelius") was her

1

immediate supervisor. Peter Comanda ("Comanda") was the JJC Chief of Campus Police. Defendants claim that prior to June 2003, Carlson's work performance was poor and she was reprimanded on several occasions for misconduct at work. Defendants also contend, and Carlson admits, that in June 2003 she sent an anonymous letter ("Letter") to a co-worker ("Co-worker"). In the Letter, Carlson indicated that the Letter had been sent on behalf of the entire Police Department staff. Carlson personally attacked the Co-worker in the Letter, complaining about the Co-worker's behavior and attitude at work. Carlson admits that Comanda questioned her concerning her involvement with the Letter and that she lied to Comanda on four occasions, denying that she had sent the Letter. Carlson admits that she finally confessed to writing the Letter when Comanda informed her that her fingerprints had been found on the Letter. Comanda then called a meeting on July 16, 2003, with Carlson and the Co-worker to discuss the Letter. According to Carlson, during the meeting Comanda used the word "bitch" four times, which offended Carlson. Carlson claims that after the meeting she sent an email ("July 16 Email") complaining about Comanda's alleged conduct to Alan Hardersen ("Hardersen"), the JJC Vice President of Student Services. After Carlson complained to Hardersen, Comanda discovered that Carlson had been discussing the Letter investigation with other employees at the Police Station and Comanda ordered Carlson to refrain from discussing the Letter investigation further with any employees at the Police Station. Defendants claim that Carlson disobeyed Comanda's order and Comanda suspended Carlson and sent her home as a

disciplinary measure on July 17, 2003. Defendants contend that sometime during that same afternoon Comanda decided to seek Carlson's termination. According to Defendants, Carlson's termination was then deferred until the matter could be discussed with Hardersen and the JJC President, and on the next day Comanda instituted a reprimand and five-day suspension. Carlson's employment was terminated on August 6, 2003.

Carlson includes in her complaint a claim alleging a hostile work environment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* (Count I), a claim alleging a violation of 42 U.S.C. § 1983 ("Section 1983") (Count II), a Title VII gender discrimination claim (Count III), and a Title VII retaliation claim (Count IV). Defendants moved to dismiss the Section 1983 claim (Count II), Carlson indicated that she did not oppose the motion, and on April 14, 2006 we granted the motion to dismiss Count II. On September 27, 2006 we granted Defendants' motion for summary judgment on the gender discrimination claim (Count III), granted the motion for summary judgement on the hostile work environment claim (Count I), and granted the motion for summary judgment on the retaliation claim brought against Comanda (Count IV). We denied Defendants' motion for summary judgment on the retaliation claim brought against ICC (Count IV). We also denied without prejudice Defendants' motion to strike the request for punitive damages. ICC has now filed a motion requesting that the court reconsider the September 27, 2006 ruling.

**LEGAL STANDARD**

A motion for reconsideration may be brought "to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Indus.*, 90 F.3d 1264, 1269-70 (7th Cir. 1996). Such motions cannot be used as a "vehicle to produce new evidence that could have been" produced earlier or as a vehicle to "rehash[] previously rejected arguments." *Id.*

**DISCUSSION**

ICC argues that the court erred by failing to recognize the protected activity that Carlson mentioned in her EEOC complaint. In our prior ruling we noted that there is evidence that shows that Carlson sent the July 16 Email complaining about Comanda on July 16, 2003, and that Defendants admitted that Comanda did not decide to terminate Carlson's employment until July 17, 2006. (9/27/06 OP 13-14). Such evidence indicates that it is at least possible that Comanda decided to seek Carlson's termination because of the July 16 Email. ICC argues in the instant motion that the court incorrectly considered the July 16 Email as protected activity and that the only activity by Carlson that can be considered protected activity was an email later sent by Carlson to Hardersen on July 28, 2003 ("July 28 Email") complaining about Comanda. ICC argues that the court cannot consider the July 16 Email because it was not mentioned in Carlson's EEOC charge.

4

I. Lack of Clarity Concerning Subject of Motion For Reconsider

ICC's motion to reconsider is deficient on its face because ICC fails to clearly delineate what aspects of the court's prior ruling ICC is challenging. ICC indicates in its motion that it "moves this court to reconsider that portion of its September 27, 2006 ruling denying summary judgment to defendant on Count III (Retaliation) of the complaint." (Recon. 1). Count IV of the complaint includes a retaliation claim, but Count III of the complaint in this action does not include a retaliation claim. (Compl. 4, 6). ICC also states in its motion for reconsideration that "Plaintiff filed a three-count complaint on October 13, 2005, alleging Gender Discrimination (Count I), Hostile Work Environment (Count II) and Retaliation (Count III)." (Recon. 1). This statement is also inaccurate. On October 13, 2005, Carlson filed a complaint that contains four counts that are clearly delineated with headings that include "COUNT I," "COUNT II," "COUNT III," and "COUNT IV" and each of the headings indicate what claims are included in each count. (Compl. 1, 3, 4, 6). ICC states that it seeks to challenge the court's ruling in regard to "Count III (Retaliation)," but it is not clear from such a statement whether ICC seeks to challenge the court's ruling in regards to Count III or the retaliation claim in Count IV, or both. ICC should not have any such confusion concerning the claims at issue in this case, because the claims are clearly delineated in the complaint and this court laid out the claims in the complaint count by count in its prior ruling. (9/27/06 OP 3). It appears based upon the arguments presented by ICC that it intends to challenge the court's findings in relation to the retaliation claim in Count IV. Although we

5

could deny the motion for reconsideration alone based upon ICC's lack of understanding of the claims at issue in this case and this court's prior ruling, as we will explain below, the motion for reconsideration is denied for other reasons as well.

II. Failure to Raise Arguments

ICC had an opportunity to present its arguments in regards to the July 16 Email and the scope of the EEOC complaint in Defendants' motion for summary judgment and ICC failed to do so. Defendants stated in their motion for summary judgment that Carlson engaged in protected activity on July 28, 2003, but Defendants did not mention ICC's current arguments concerning the July 16 Email and the scope of the EEOC complaint. (Mem. DSJ 14). Defendants even acknowledged in their motion for summary judgment that it was a possible that the July 16 Email could be considered protected activity and Defendants presented an alternative argument in the event that the "'protected activity' [wa]s construed to be the earliest complaint on July 16, 2003 . . . ." (Mem. DSJ 14). Neither was there any mention of the July 16 Email and the scope of the EEOC charge in Defendants' reply for their motion for summary judgment. (Reply 1-6). ICC thus failed to raise its current arguments earlier and has not provided any reason showing that it could not have presented the arguments in Defendants' motion for summary judgment. Therefore, we deny ICC's motion for reconsideration. *See Caisse Nationale de Credit*, 90 F.3d at 1269-70(stating that "[a] party seeking to defeat a motion for summary judgment is required to 'wheel out all its artillery to defeat it'" and that "[r]econsideration is not

an appropriate forum for . . . arguing matters that could have been heard during the pendency of the previous motion").

III. Merits of Motion

We also note that even if ICC had included in its motion for summary judgment its arguments relating to the July 16 Email and the EEOC complaint, we would still deny the motion for reconsideration. Before bringing a Title VII suit in federal court, a plaintiff must first file a timely complaint with the EEOC alleging the same claims as those alleged in the federal court complaint. *Babrocky v. Jewel Food Co.,* 773 F.2d 857, 863 (7th Cir. 1985). Only claims that are "like or reasonably related to the allegations of the charge and growing out of such allegations" may be included in the federal court complaint. *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.,* 538 F.2d 164, 167 (7th Cir.1976) (internal quotations and citations omitted). A claim in a federal court complaint is "like or reasonably related" to an EEOC complaint if there is a factual relationship between the two, *Cheek v. Western & Southern Life Ins.,* 31 F.3d 497, 501 (7th Cir. 1994), and an EEOC investigation into the EEOC complaint charges would be likely to reveal the claim made in the federal court complaint. *Id.* at 500. For a factual relationship to exist between the claim in the federal court complaint and the EEOC complaint, the claims "must, at minimum, describe the *same conduct* and implicate the *same individuals." Id.* at 501 (emphasis in original). In the instant action, Carlson stated in her EEOC complaint that "[o]n July 28, 2003, [she] engaged in a protected

activity when [she] filed a formal complained [sic] with Diane Centner . . . ." (Compl. Ex. 1).

### A. Carlson's Belief Concerning Protected Activity

ICC contends that the court improperly concluded that the July 16 Email constituted protected activity since Carlson alleged in the EEOC complaint that she engaged in protected activity in the July 28 Email and did not specifically mention the July 16 Email. First, we are not bound by ICC's interpretation as to when Carlson believed that she engaged in protected activity. Such a determination is a legal determination that can only be made in this case by the court or trier of fact. We must simply consider the facts included in the EEOC complaint to assess the scope of the EEOC complaint. Having considered the facts, as we explain below, Carlson engaged in protected activity in both the July 16 Email and the July 28 Email which is encompassed by the EEOC complaint. ICC also argues that Carlson admitted, pursuant to Local Rule 56.1, that she engaged in protected activity on July 28, 2003. (Recon. 3). Just because Carlson admitted that she engaged in protected activity on July 28, 2003 does not mean that Carlson also did not engage in protected activity on July 16, 2003. Local Rule 56.1, instructs parties to file statements of material facts. LR 56.1. Local Rule 56.1 is not intended to provide an opportunity for the parties to discuss legal conclusions such as whether Carlson engaged in protected activity under Title VII. *See Malec v. Sanford*, 191 F.R.D. 581, 585 (N.D. Ill. 2000)(stating that "[t]he purpose of the 56.1 statement is to identify for the Court

the evidence supporting a party's factual assertions in an organized manner: it is not intended as a forum for factual or legal argument"); *Moore v. Tribune Co.*, 2006 WL 2547104, at *2 (N.D. Ill. 2006)(stating that "Local Rule 56.1 for the Northern District of Illinois requires that the parties support all disputed facts with specific references to the record and further emphasizes that it is inappropriate to include legal conclusions and/or argument in the Rule 56.1 statements of facts"). Thus, ICC improperly included the legal conclusion concerning protected activity under Title VII in Defendants' statement of material facts.

### B. Scope of EEOC Complaint

In the EEOC complaint Carlson references the animosity between herself and Comanda and that Comanda ultimately terminated her employment in retaliation. (Compl. Ex. 1). The EEOC complaint thus involved the same individuals involved in the July 16 Email: Carlson and Comanda. The EEOC complaint also makes a general reference to the same general conduct of Comanda mentioned by Carlson in the July 16 Email. Carlson even alleges generally in her EEOC complaint: "Discharge - August 6, 2003, in retaliation for complaining about discriminatory practices in respondent's workplace." (Compl. Ex. 1). The discriminatory practices by Comanda contained in the above general statement in the EEOC complaint would apply to the July 16 Email as well as the July 28 Email. It is also a reasonable possibility that during an investigation into the charge that Comanda terminated

Carlson's employment because of the July 28 Email, the complaint by Carlson about Comanda included in her July 16 Email would have been discovered and possibly was a basis for retaliation. Thus, the protected activity included in both the July 16 Email and the July 28 Email falls within the scope of the EEOC complaint. Therefore, even if ICC had presented the instant arguments with Defendants' motion for summary judgment we would deny ICC's motion for reconsideration due to its lack of merit.

## CONCLUSION

Based on the foregoing analysis, we deny ICC's motion for reconsideration.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: November 15, 2006